STARR et al. v. STARR et al.

(Supreme Court, Special Term, New York County. April 13, 1910.)

1. PARTNERSHIP (§ 68*)—PARTNERSHIP REALTY.
    Where real property is acquired by a partnership, it remains real property, unless it is converted for all purposes into personalty by the agreement, express or implied, of the partners.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 101–111; Dec. Dig. § 68.*]

2. PARTNERSHIP (§ 68*)—CONSTRUCTION OF AGREEMENT—REAL PROPERTY.
    A parcel of land was transferred to D. and P., as partners composing the firm of D. & P., which was never used in the conduct of the business of the firm, but was leased and the rents deposited in the firm's bank account with other partnership moneys. Subsequently a second parcel was conveyed to them without mention of the partnership relation, and this parcel was used by the firm in its business. By a later agreement to continue the partnership each party continued to contribute as capital the amounts to his credit on the books as capital three months previous to the agreement, and D. was to be allowed a specified rent for premises

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

occupied by the firm, "not owned in common or jointly by the parties hereto," and in case of D.'s death before the lease of such property expired the lease was to become the sole property of P. The agreement also provided that on D.'s death P. might purchase the partnership property, and a plan was agreed upon for determining its value and the times of payment. The third and fourth paragraphs of D.'s will authorized his executors to ascertain the value of his share in the firm and to loan the same to P. on terms specified, and bequeathed the amount to his executors in trust for purposes specified. The sixth paragraph gave all his real estate to his executors, to hold for the use of his wife, and on her death to be divided among his children. *Held*, that the two parcels of land were not partnership assets, but, whether they were or not, they were regarded by the partners as real estate, and D.'s interest in them would pass under the sixth paragraph of the will.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 101–111; Dec. Dig. § 68.*]

Action by Walter D. Starr and others against Chandler D. Starr and others. Judgment for plaintiffs.

Wilfrid N. O'Neil, for plaintiffs.

Harold Swain (Hamilton C. Rickaby, of counsel), for defendant Title Guarantee & Trust Co.

Theodore S. Rumsey, Jr., for defendant Shiland.

Otto B. Schmidt, for defendant Mari E. Starr.

Robert H. Hahn, for defendants Haviland and others.

Walter B. Walker, for defendants Cannon and others.

Frank M. Tichenor, for defendants Diamond and Dry Dock Savings Inst.

GIEGERICH, J. The action is for a partition and sale of the premises hereinafter mentioned. Both the plaintiffs and the defendant Chandler D. Starr, through his committee, the Title Guarantee & Trust Company, claim title under the will of William H. Dannat, deceased. A single question, though one of much interest and not altogether free from difficulty, requires determination. It involves the rights of the parties in certain real property which was conveyed to the former owners while they were copartners in trade, and which was in part used in the conduct of their business. The question is whether the interest of one of the copartners in that property passed under the third and fourth paragraphs of his will, by which he bequeathed his interest in the partnership and its assets, or under the sixth paragraph, by which he devised his real property.

In the year 1882 the said William H. Dannat and Charles E. Pell, both since deceased, were in partnership as lumber merchants in the city of New York under the firm name of Dannat & Pell. On the 2d day of May in that year, by an indenture made between Caroline E. Worthen and her husband, as parties of the first part, and William H. Dannat and Charles E. Pell, as partners composing the firm of Dannat & Pell, of the city of New York, as parties of the second part, one of the parcels of property now sought to be petitioned was conveyed to the said parties of the second part and to their heirs and assigns. These were the premises known as No. 15 Tompkins street, in the borough of Manhattan, New York City, and consisted of a lot of land

·on which a tenement house was erected. This property was never used in the conduct of the business of Dannat & Pell, but was leased ·to tenants, who paid their rents to the firm, and the rents so collected ·were deposited in its bank account with the other partnership moneys. ·On the 13th day of May, 1886, Dannat and Pell being still engaged ·in the same business as copartners, the other parcel of land involved in this action was conveyed to them, but no mention was made in the deed ·of the partnership relation. These were the premises known as No. 19 Tompkins street and No. 26 Mangin street, in the borough of Man- hattan, New York City, and consisted of two contiguous lots of land running through from one street to the other. Upon one of these lots ·a stable was erected at the time of the purchase, and was thereafter used by the firm in the conduct of its business. The other lot was un- :improved, and was used by the firm as a lumber yard.

There was no testimony concerning the funds from which the pur- ·chase price of either parcel was paid. The articles of copartnership under which the firm was doing business in the years 1882 and 1886, when these properties were acquired, are not in evidence; but this is ·not material, because that partnership was continued in 1887 between the same parties by a new agreement dated October 4, 1887, under which, with a subsequent modification which is not material, they con- ·tinued to conduct the lumber business until the death of William H. Dannat in 1889, and the agreement to continue the copartnership is in ·evidence. The real property in question continued to be held, leased, ·and used as before up to the time of Mr. Dannat's death. William H. Dannat was the owner of certain other real property in the city of New York, which was leased by him to the firm of Dannat & Pell in ·the year 1883. This lease is mentioned and confirmed in the agreement ·to continue the copartnership of October 4, 1887, which I am about ·to refer to. He was also the owner at the time of his death of various ·other parcels of real property which are not included in the subject- :matter of the present action and had nothing to do with the firm's busi- ·ness.

It is necessary now to examine, somewhat at length, the provisions ·of the articles of copartnership and of the will of William H. Dannat. The said agreement to continue the copartnership, dated October 4, 1887, contained, amongst other provisions, the following:

"Second. Each party hereto shall continue to contribute as capital the ·amounts which stood to their respective credits as capital on the books of ·said firm on the 1st day of July, 1887, subject to deductions for any losses ·which may have occurred by bad debts or otherwise; the said capital to be ·used and employed in common between the parties hereto for the support and maintenance of said business to their mutual benefit and advantage as here- inafter provided. * * *

"Eighth. That the said William H. Dannat shall continue to be allowed by ·the said copartnership the clear yearly sum of $7,600, as and for the yearly rent ·of the premises in the city of New York occupied by said copartnership, and belonging to the said William H. Dannat individually, and which are not owned in common or jointly by the parties hereto, together with all taxes, assess- ments, and insurance thereon, pursuant to and in accordance with the terms ·of a certain indenture of lease made by the party of the first part to the said firm of Dannat & Pell, dated January 1, 1883, and recorded in the office of the register of the city and county of New York on the 3d day of June, 1885, in ·Liber 1868 of Conveyances, page 370, which said lease is hereby affirmed by

the parties hereto and made part of this agreement. And it is further agreed that in the event of the death of the said William H. Dannat before the expiration of the term of said lease the said lease shall not by reason thereof terminate, but shall thereafter become and be the sole property of the said Pell, and the said Pell shall thereafter be the sole lessee of said premises therein described until the expiration of the term thereby granted."

It thus appears that by these articles of copartnership the capital to be contributed by each of the partners was agreed upon, and was fixed at the amount which stood to their credit as capital on the books of the firm on a day named. No mention was made of the real property acquired in 1882 and 1886, and to which title had been taken in the names of both Dannat and Pell. It would seem, therefore, that although the use of this property was undoubtedly contributed to the firm by mutual consent after the partnership agreement of 1887, as it had been before that time, it was not contemplated that the property itself should form a part of the capital of the firm. This view is strengthened by the fact that the partnership agreement, while expressly providing that the lease theretofore made by Dannat to the firm should vest in Pell as sole lessee after the death of Dannat—a provision apparently unnecessary—made no provision whatever with regard to the property owned in fee by the partners.

The eleventh paragraph of the said agreement of October 4, 1887, was as follows:

"Eleventh. That in case of the death of the said William H. Dannat before the expiration of this agreement, leaving the said Pell him surviving, then the said Charles E. Pell shall, within the space of 12 calendar months next after the decease of the said Dannat, settle and adjust with the representative or representatives of the said William H. Dannat all accounts, matters and things relating to the said partnership. And if the said Pell shall be desirous of purchasing the share and interest of the said Dannat of and in the property, credits, and effects of said partnership, and shall elect to do so within 6 weeks after the decease of said Dannat, then the value thereof shall be ascertained and agreed upon between him and the representative or representatives of the said Dannat; and, if they cannot agree, then the value thereof shall be ascertained by two indifferent persons, one to be chosen by the said Pell and the other by the representative or representatives of the said Dannat, who, in case of dispute between them, shall choose a third disinterested person, and the decision of a majority of those so chosen shall be final. But in determining the value of such share and interest no sum shall be charged or allowed for or on account of the good will of the said business or the continued use of the partnership name; and the said Charles E. Pell shall thereupon become the purchaser of the said share and interest at such valuation to be paid as hereinafter provided, to wit: He shall execute and deliver a bond in a sufficient penalty for securing to the representative or representatives of said William H. Dannat the payment of the amount found to be due to them on such accounting from the said Pell for the share and interest of said Dannat in said business at the date of his decease, in ten equal installments, payable at the respective periods of one year, two years, three years, four years, five years, six years, seven years, eight years, nine years, and ten years next after the decease of the said Dannat, with interest at the rate of 6 per cent. per annum from the time of such decease, said bond to contain a condition that in the event of the death of the said Charles E. Pell the whole amount of the principal sum then remaining unpaid shall immediately become and be due and payable, and a further condition that if the said Pell shall make default in the payment of any installment of principal or interest when the same shall become due and payable, shall continue in default for a period of 90 days thereafter, then the whole of the principal sum then remaining unpaid shall, at the option of said representative or representatives, immediately become and

be due and payable. In case of the death of said Pell before the expiration of this agreement, leaving the said Dannat him surviving, or in case at the decease of said Dannat as aforesaid said Pell shall decline to purchase the share of said Dannat in the manner aforesaid, then the credit and effects of the said partnership shall be collected in or converted into money, and out of the money arising therefrom all the debts due from the said partnership shall be discharged, and the surplus and residue shall be divided between the said surviving partner and the representative or representatives of the deceased partner in the same proportion in which the surplus or residue would have been divided between the said partners if living at the expiration of the said partnership by the effluxion of time."

The third and fourth paragraphs of the will of William H. Dannat are as follows:

"Third. With respect to my share and interest in the business now carried on by me in partnership with Charles E. Pell, under the firm name of Dannat & Pell, I do authorize, empower and direct my executors hereinafter named, or such of them as shall qualify, by an accounting with the said Charles E. Pell to ascertain the value of my share and interest in the said business, excluding any valuation for the good will of the business and the continued use of the said partnership name, with power for the said executors to refer to arbitration or otherwise to compromise or settle any question that may arise upon or in connection with said accounting in such manner as they may think proper, and generally to do and execute all such acts and things in relation to the premises as may appear to them necessary or expedient, without being answerable for any loss which may arise thereby. And I authorize and direct my said executors to permit the whole of the amount which on taking the accounts of the said partnership shall appear to be due to my estate or to my said executors, as and for my share and interest in the said partnership business and in the assets thereof, to remain invested in the said business as a loan to my partner, Charles E. Pell, in case he survives me and shall elect to take the same by executing and delivering to my executors the bond hereinafter provided for, but not longer than the life of the said 'Charles E. Pell, and in such maner that the payment thereof in ten equal installments, payable at the respective periods of one year, two years, three years, four years, five years, six years, seven years, eight years, nine years and ten years next after my decease, or immediately upon the death of said Pell before the expiration of the aforesaid periods, with interest thereon at the rate of six per cent. per annum payable semi-annually, shall be secured to be paid to my said executors by the personal bond of the said Charles E. Pell, said bond to contain a condition that in the event of the death of the said Charles E. Pell the whole of the principal sum then remaining unpaid shall immediately become and be due and payable; and a further condition that if the said Pell shall make default in the payment of any installment of principal or interest when the same shall become due and payable, and shall continue in default for a period of ninety days thereafter, then the whole of said principal sum then remaining unpaid shall immediately become due and payable. And I hereby authorize my executors to extend the time of payment of principal or interest, but not beyond the life of said Charles E. Pell.

"Fourth. I give and bequeath unto my executors the whole of the amount which upon such accounting shall be found to be due to my estate as and for my share and interest in the said partnership business and in the assets, property and credits thereof, in trust, for the uses and purposes hereinafter set forth, to wit: I. To invest the same as a loan to my said partner, Charles E. Pell, in the manner hereinbefore directed, if he survive me and elect to take the same, and until the collection of the whole of the principal sum so loaned by them to said Pell or until the decease of the said Charles E. Pell if his death shall happen before such collection, my said executors shall collect and receive the interest to be paid thereon to them by the said Pell and divide the said interest when collected into four equal parts, and they shall pay one of such equal parts to each of my four children, to wit, Mary D. Starr, David J. Dannat, Julia M. Haviland and William T. Dannat. II. Sub-

ject to the foregoing trust and loan to the said Charles E. Pell, I give and bequeath the principal sum so loaned and the several installments of said principal sum as the same shall become due, or in case the said Pell shall decline to take such loan and execute the bond required, the whole sum which shall be found to be due to my estate as and for my share and interest in the said partnership business as follows, viz.: To my son David J. Dannat one-fourth thereof; to my son William T. Dannat one-fourth thereof. And the remaining two-fourths thereof I give and bequeath to my executors in trust for my daughters Mary D. Starr and Julia M. Haviland as follows, to wit: My executors shall set apart and invest, and from time to time reinvest, each one-fourth part separately in their names as trustees, designating the daughter for whose benefit the same shall be set apart; and they shall collect and pay the income thereof to my daughter so designated, for her use during the life of such daughter, and upon her death I give and bequeath the principal sum so designated and set apart for her to her issue, and if she shall die without issue surviving her, I then give and bequeath such principal sum to my other children then surviving and to the issue of any deceased child, such issue to take his, her or their parent's share per stirpes."

The sixth paragraph of the will is as follows:

"Sixth. All my real estate I give, devise and bequeath to my executors hereinafter named, to have and to hold to them and to their successors in trust, to receive the rents and profits of my said real estate, and to pay and apply the same to the use of my wife, Sussanna J. Dannat, for her life; and upon the death of my said wife I give, devise and bequeath my said real estate to my four children hereinbefore named, share and share alike; and for the purposes of this trust I authorize, empower and direct my said executors and their successors to lease the said real estate or any part thereof from time to time, for such terms and for such rent as they shall see fit; and I do further authorize and empower my said executors and their successors to sell and convey the whole or any part of my said real estate, either at public or private sale, if they shall deem it advisable so to do; and either or any of said executors or trustees may become a lessee or purchaser thereof provided the remaining executors or trustees shall consent thereto; and to invest the net proceeds of such sale or sales and keep the same invested, and to receive and collect the net income and profits thereof, and to apply the same to the use of my said wife during her lifetime, and upon the death of my said wife to pay the principal sum or sums so held by them in trust to my said four children, share and share alike."

The seventh and eighth paragraphs are as follows:

"Seventh. All the rest, residue and remainder of my personal estate I give and bequeath to my executors in trust, to convert the same into money as soon as practicable after my decease, and to invest and reinvest the proceeds and to collect and receive the interest and income therefrom and apply the same to the use of my said wife during her life, and upon the death of my said wife, I give and bequeath the whole principal sum to my said four children, share and share alike.

"Eighth. The share of my estate hereinbefore bequeathed to my wife, Sussanna J. Dannat, and to my executors in trust for her use and benefit is to be in lieu and bar of her dower in my estate."

The will and the said agreement of October 4, 1887, to continue the copartnership were both made on the same day, October 4, 1887, and the question to be determined is whether William H. Dannat's interest in the real property acquired as before stated by himself and his partner in 1882 and 1886 passed under the fourth or under the sixth paragraph of his will. I am of the opinion that, whatever may have been the case at the time of the respective purchases in 1882 and 1886, there is no sufficient evidence that at the time when the said partnership agreement of October 4, 1887, was entered into the partners intended to

treat these parcels of land as part of the capital or assets of the business to be thereafter conducted under that agreement. I think the reasonable inference to be drawn from the provisions of that agreement is quite the contrary, for, as already shown, those parcels are not expressly included within those provisions, although the parties did make express provision concerning a mere leasehold interest which was one of the assets of the firm. The evidence, therefore, does not satisfy me that either of these parcels was part of the partnership assets at the time of the death of William H. Dannat, and I shall find accordingly.

Assuming, however, that this property was firm assets, the same result would be reached. Although partnership property, it would still be real property, unless it had been converted for all purposes into personalty by the agreement, express or implied, of the partners. Darrow v. Calkins, 154 N. Y. 503, 49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637. There were no equities either of the partners or of creditors which required an equitable conversion for their protection. If there was such a conversion, it must have been by reason of the implied agreement of the partners that this property should be dealt with as ordinary firm assets (Buckley v. Doig, 188 N. Y. 238, 80 N. E. 913); and I find no evidence of such an intention. On the contrary, the reasonable inference from the partnership agreement is that this real property was to be a thing altogether apart from the ordinary assets of the business. This seems to be fairly shown by reading the eighth and eleventh articles of the partnership agreement together. By the latter article it is provided that in the event of Dannat's dying before Pell the latter should settle and adjust with Dannat's representatives all accounts, matters, and things relating to the partnership, and that, if Pell should desire to purchase the "share and interest of the said Dannat in the property, credits, and effects of the said partnership," he might do so at the valuation fixed upon the accounting. The sum so fixed, if the purchase was made, was to be secured by his personal bond, and was to be paid in installments extending over a period of 10 years. It was in effect the same provision which was embodied in the third paragraph of the will. No provision was made for the conveyance of the legal title of the real property to Pell in case he should exercise his option to purchase the interest of his deceased copartner. Yet by the eighth article of the agreement it had been very carefully provided that the lease of certain other property which had been made to the firm should vest in the surviving partner. The absence of any provision designed to accomplish a like result in regard to the real property held in fee by the firm makes the conclusion irresistible that no such result was intended to be accomplished.

If, therefore, this real property was partnership assets, it seems apparent that the partners regarded it as something quite different from the other assets of the firm, and something which did not require to be accounted for upon a dissolution of the partnership. It is apparent, in other words, that they regarded it as real property, and intended to deal with it as such and as tenants in common, and there are no equities which require their intention to be interfered with. If these views are correct, the property, even though firm assets, would pass under

the devise of all the testator's real estate contained in the sixth paragraph of his will. Much that I have said in giving a construction to the articles of copartnership applies equally to the construction of the will, and if it is once admitted that no "out and out" conversion was effected by agreement of the partners, I think it must be held that the language of the sixth paragraph of the will is more apt than that of the third and fourth paragraphs for the purpose of disposing of this property. It is also to be noted that the income of all the real estate for her life, together with certain other bequests, was given to the widow in lieu of dower; whereas, the bequests made by the third and fourth paragraphs were pure gifts. If the case were otherwise evenly balanced, this circumstance would probably be sufficient to lead to a construction which would include the property here in question within the sixth paragraph, rather than within the third and fourth paragraphs, of the will.

In reaching these conclusions I have paid no attention to what was done by the surviving partner or by the representative of the deceased partner after the latter's death in the course of the administration of the estate. Neither their acts nor their opinions are binding upon the incompetent, who now contends for a construction of the will, which is opposed to both. If a case is to be made, a motion to strike out such testimony appearing at pages 8, 9, 10, and 13 of the minutes will be entertained.

The plaintiff is therefore entitled to an interlocutory judgment as prayed for, including a sale of the property at public auction. The form of the decision and interlocutory judgment which is to be entered hereon may be presented upon the usual notice of settlement.